**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN CHIROPRACTIC** | : | **CIVIL ACTION** |
| **ASSOCIATION, *et al.*** | : | |
| *Plaintiffs* | : | |
| | : | **NO. 12-7243** |
| **v.** | : | |
| | : | |
| **AMERICAN SPECIALTY HEALTH** | : | |
| **INCORPORATED, *et al.*** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    March 27, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before the Court are motions to dismiss filed by Defendants American Specialty Health Inc., American Specialty Health Networks, Inc.,[1] CIGNA Corporation and Connecticut General Life Insurance Company[2] (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which seek the dismissal of claims asserted against them under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1132(a)(1)(B), based on a lack of standing, failure to administratively exhaust claims, and/or failure to state a claim upon which relief can be granted. [ECF 41 and 43]. Plaintiffs American Chiropractic Association ("ACA"), on its own behalf and on behalf of its members, Steven G. Clarke, D.C., on his own behalf and on behalf of a proposed class of all similarly situated Doctors of Chiropractic, and Carol A. Lietz, on her own behalf and a proposed class of all similarly situated

---

[1] Defendants American Specialty Health Inc. and American Specialty Health Networks, Inc., herein, collectively, referred to as "ASHN."

[2] Defendants CIGNA Corporation and Connecticut General Life Insurance Company herein, collectively, referred to as "CIGNA."

health insurance subscribers, (collectively, "Plaintiffs") have opposed the motions.  [ECF 51].
Thus, the matter is ripe for consideration.

For the reasons stated herein, Defendants' motions to dismiss are granted.

## BACKGROUND

For the purpose of ruling on Defendants' motions to dismiss, this Court accepts, as true,
the factual allegations contained in Plaintiffs' complaint.  However, because this Court's
decision is limited to the issues of standing and exhaustion, only those facts relevant to these
particular issues are summarized.[3]

### Plaintiff Carol A. Lietz's Claims[4]

Lietz is a subscriber to an employer healthcare plan offered by her private employer and
administered by CIGNA ("Plan").[5]  (Comp. ¶15).  In turn, CIGNA retained ASHN to administer
the chiropractic benefits for its insureds, including Lietz.  (Id. at ¶7).

Under the Plan, Lietz sets aside funds in a Health Savings Account ("HSA") to cover out-
of-pocket medical costs, including deductibles and co-payments.  Any unused balance in the
HSA is rolled over for the next calendar year's expenses.  (See Plan at p. 62).

Relevant to this discussion, the Plan defines "Covered Health Services" as follows:

---

[3] Since Plaintiffs lack standing to bring this action and/or have failed to exhaust their administrative remedies, there is no need to resolve the issue of whether a claim has been asserted upon which relief can be granted.

[4] Notably, the facts underlying Lietz's claims differ from those underlying the claims asserted by Dr. Clarke and the ACA, calling into question the propriety of Plaintiffs' joinder of these claims in one action.

[5] A copy of the Plan was attached as an exhibit to Defendant CIGNA'S motion to dismiss.  Because Plaintiffs refer to and rely upon the terms of the Plan in their complaint, this Court may consider the Plan when deciding Defendants' motions to dismiss.

> Benefits for Covered Health Services depend on the type of expense and the option you elect. In all cases, benefits are based on reasonable and customary charges and medical necessity as determined by the option you elect. In-network expenses are based on the rate negotiated by the Claims Administrator with the medical provider.

(*Id.* at p. 175). The Plan also defines "Eligible Expenses for Covered Health Services" (a) for in-network ("INET") services as "the contracted fee(s) with that provider," and (b) for out-of-network ("ONET") services as "the negotiated rates agreed to by the non-Network provider and either the Claims Administrator or one of its vendors, affiliates or subcontractors." (*Id.* at p. 177).

In March 2012, Lietz received chiropractic services from her CIGNA INET provider, Dr. Inchiostro. (Comp. ¶32). Thereafter, Dr. Inchiostro submitted a claim for reimbursement of five separate services rendered to ASHN on behalf of Lietz in the amount of $160.00. (*Id.*). On June 12, 2012, Dr. Inchiostro received a remittance from ASHN in the amount of $88.00 as the "total amount allowed" under the INET fee schedule. (*Id.*).

As required, CIGNA sent Lietz an Explanation of Benefits ("EOB") statement which indicated that the "amount billed" for the chiropractic services rendered by Dr. Inchiostro was $127.28.[6] (*Id.* at ¶34). The statement also indicated that the $127.28 amount applied against her deductible and was paid from her HSA. (*Id.*). In her complaint, Lietz disputes the payment and corresponding deduction from her HSA, and argues that each amount deducted should have been limited to the actual monetary compensation Dr. Inchiostro received for his services, *i.e.*, $88.00.

After Lietz raised an issue with her provider regarding the charges made (*Id.* at ¶36), on September 18, 2012, Dr. Inchiostro emailed ASHN and inquired:

---

[6] The EOB statement, however, does not mention that $88.00 was the amount paid to Dr. Inchiostro.

3

> I am having our patients Health Reimbursement Account money being pulled out of their accounts by Cigna, sent to ASHN and then a lessor amount being sent to us by ASHN. When I called ASHN to inquire where the extra HRA funds were, I was told that ASHN and Cigna have a different fee schedule than ASHN and us, the provider's office, do. Which would lead me to believe that ASHN pockets this extra money that is above our fee schedule arrangement with them. The customer service rep I spoke with at ASHN (ref# 8241047) told me to look at our contract with you and it should specify this in there. Well, I've looked through the whole thing and have not come across anything that explains why my patient's HRA money is being kept by ASHN instead of paying for qualified medical expenses. Could you please explain this to me in writing or link me to the place in our contact with you that is supposed to explain this, as the customer service rep stated. I would appreciate a prompt response to this matter as I and the patient are wondering where their HRA funds are ending up!

(*Id.* at ¶37).

ASHN responded the next day by email:

> Thank you for your inquiry. I do apologize if the office was advised to check in contractual agreement for information that are not pertinent to the office. The contractual agreement between the office and ASH is:  the office will be reimbursed at the fee schedule amount allowed by the Payor Summary, available under attachment G, section 2.0. Any other agreement between ASH and Cigna is confidential and will not be available in any written agreement between the doctor and ASH. If the member has any questions on how the HRA account is used, please refer the member to the Cigna Member service department.

(*Id.* at ¶38).

Notably, the complaint is silent as to whether Lietz or Dr. Inchiostro ever contacted CIGNA or followed up in any way.

The gravamen of Lietz's complaint is that the EOB statements CIGNA issued reflected an "amount billed" as the negotiated fee rate established under CIGNA's agreement with the provider, ASHN. This negotiated rate differed substantially from the negotiated (lower) rate established under ASHN's agreement with the actual provider/chiropractor, which is the rate that was ultimately paid for the services rendered yet billed to the consumer at the CIGNA/ASHN

4

rate. (*Id.* at ¶¶32-44). Lietz further contends that under the CIGNA/ASHN fee agreement, CIGNA treated ASHN as a provider and issued EOBs with her out-of-pocket obligation calculated based on the CIGNA/ASHN fee schedule agreement, to manipulate and achieve CIGNA's medical loss ratio (MLR – the ratio of money spent paying claims to total expenses), as required under various laws. (*Id.* at ¶7-8).

*Plaintiff Dr. Clarke's Claims*

Dr. Clarke is an ONET chiropractor who has not contracted with Defendants or agreed to accept their fee schedule. (*Id.* at ¶98). Dr. Clarke asserts that he provided chiropractic care to patients who are participants of unspecified ERISA plans administered by CIGNA and who signed a "standard Assignment of Benefits form" "authorizing payment of medical benefits" to him, while still remaining "financially responsible" for the services rendered; *to wit*:

> I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered. I understand that I am financially responsible for all charges whether or not they are paid by insurance (commercial, worker's compensation, auto, etc.). In the event of an unpaid balance, I am aware that my bill will be sent to the collection agency and that I will be held responsible for any and all charges incurred, including attorney fees.

(*Id.* at ¶101).

Dr. Clarke asserts that in processing the claims submitted on behalf of his patients, ASHN, acting as CIGNA's agent, applied certain internal policies designed to improperly reduce medical benefits under CIGNA plans. Specifically, Dr. Clarke alleges that ASHN has an internal policy of limiting coverage of ONET provider services to five sessions and up to two separate therapies per session regardless of whether additional services are otherwise deemed medically necessary. (*Id.* at ¶¶102, 106-107). According to Dr. Clarke, the coverage limitations are not disclosed to CIGNA's insureds, and are inconsistent with CIGNA's obligation to reimburse patients for medically necessary chiropractic therapies. (*Id.* at ¶¶106-07, 113).

5

*Plaintiff American Chiropractic Association's Claims*

ACA is a national association for chiropractors that purports to represent over 15,000 members. (*Id.* at ¶¶1, 16). In this action, ACA asserts claims for equitable and injunctive relief in an associational capacity on behalf of its members who have allegedly been injured as a result of Defendants' violations of ERISA and various state statutes. (*Id.* at ¶1, 11, 18).

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across

the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

In deciding motions to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefits*, 998 F.2d at 1196. Documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may also be considered. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007)). Under Rule 12(b)(1) a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *Id.* "With respect to 12(b)(1) motions in particular, '[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Id.* at 244 (quoting *Stalley v. Catholic Health Initiatives*,

509 F.3d 517, 521 (8th Cir. 2007)).  In determining whether a complaint adequately pleads facts

to establish standing, courts apply the standard used under Rule 12(b)(6).  *Id.* at 243.

**DISCUSSION**

The provisions of ERISA provide that a plan participant may bring a private civil action

either to recover benefits due under the terms of the plan, to enforce rights under the terms of the

plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B);

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Adams v. Life Ins. Co. of N.*

*Am.*, 2009 U.S. Dist. LEXIS 68135, at *11 (E.D. Pa. Aug. 3, 2009).

ERISA's statutory standing requirements provide in § 502(a)(1) and (3) that a civil action

may only be brought:

> (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(1), (a)(3).

The terms "participant" and "beneficiary" are defined in ERISA § 3(7)-(8):

> (7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
>
> (8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(7)-(8).

8

In addition, the Supreme Court has held that:

> the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' "

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117-118 (1989) (internal citations omitted).

To bring a civil action under ERISA, Plaintiffs must have a colorable claim to benefits under the Plan. This colorable claim requirement has a lower burden of persuasion than showing a likelihood of success on the merits. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 78–79 (3d Cir. 2001).

### Issue of Plaintiff's failure to administratively exhaust her claims

There is no dispute that Plaintiff Lietz is a participant of an ERISA plan and, therefore, has standing under the statute to pursue her claims and seek the recovery of any out-of-pocket payments incorrectly charged to her. Defendants argue, however, that Plaintiff Lietz must first exhaust her administrative remedies before suit can be filed, and moves for the dismissal of her complaint. Plaintiff does not dispute that she did not pursue administrative review of her claims.

Case law holds that "except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990); *see also Stanley v. IBEW*, 207 Fed. Appx. 185, 189 (3d Cir. 2006) (dismissing ERISA claims where plaintiffs failed to exhaust); *D'Amico v. CBS Corp.* 297 F.3d 287, 293 (3d Cir. 2002) (same); *Shephard v. Aetna Life Ins. Co.*,

2009 WL 2448548, at \*3 (E.D. Pa. Aug. 7, 2009) ("Exhaustion of plan remedies is required in claims to enforce the terms of a benefit plan . . . this exhaustion requirement is strictly enforced.").

Notwithstanding, Plaintiff argues that she should be excused from this exhaustion requirement because to do so would be futile. To establish futility Plaintiff must provide a "clear and positive showing of futility." *D'Amico*, 297 F.3d at 293; *see also Bennett v. Prudential · Insurance Co.*, 192 Fed. Appx. 153, 156 (3d Cir. Aug. 17, 2006). In determining whether futility exists, the Third Circuit identified the following factors that a court should consider:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 250 (3d Cir. 2002). These factors are not to be weighed equally. *Id.* In addition, the Third Circuit has held that a plaintiff who failed to take any actions toward exhaustion beyond an initial phone call could not be excused from exhaustion for futility. *Id.* at 252; *see also D'Amico*, 297 F.3d at 293 (affirming district court's rejection of plaintiff's futility argument and holding "[o]ur precedent makes clear, however, that plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief.").

In the complaint, Lietz does not allege that she diligently pursued administrative relief, that immediate judicial review was necessary, that Defendants failed to comply with their own internal administrative procedures, or that a plan administrator testified that any administrative appeal would be futile. Lietz alleges only that her chiropractor, on one occasion, wrote a letter to ASHN (not CIGNA) inquiring as to the purported billing discrepancy underlying her chiropractic

10

treatment cost. This limited informal communication by her provider falls short of meeting the exhaustion requirements. *See Bennett*, 192 Fed. Appx. at 156 ("[A]llowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.").

To excuse the requirement of exhaustion, Plaintiff focuses solely on her contention that Defendants had a "broad policy" of "appl[ying] the fee CIGNA pays to ASHN in calculating the amount to be allocated to insureds' deductibles." Plaintiff's complaint, however, does not provide sufficient facts to support the existence of a "fixed policy" such that an administrative appeal would be futile. *See Balmat v. CertainTeed Corp.*, 2004 WL 2861873, at \*4 (E.D. Pa. Dec. 9, 2004) (holding that a plaintiff could not establish futility by "simply cit[ing] a section of the Plan and claim[ing] that it establishes a fixed policy without providing any example or further explanation" and "without ever trying to engage the administrative appeals process."). As such, Plaintiff has failed to allege facts sufficient to make the requisite "clear and positive showing of futility" to merit a waiver of the exhaustion requirement.

Lietz also argues that dismissal based upon her failure to exhaust would be premature, and should be reserved for summary judgment. Plaintiffs' reliance on *Gunning v. Unisys Corp.*, 2009 WL 249793 (W.D. Pa. Feb. 2, 2009) and *Carducci v. Aetna U.S. Healthcare*, 247 F. Supp.2d 596, 610 (D.N.J. 2003) to support her argument is misplaced since the complaints in those cases contained sufficient factual allegations to support a claim of futility. Here, as described, Lietz's factual allegations are insufficient to make the required "clear and positive showing of futility." Plaintiff's argument ignores decisions of this Circuit which have deemed dismissal warranted where the complaint lacked factual allegations to establish futility. *See e.g., Bennett v. Prudential Ins. Co.*, 192 Fed. Appx. 153, 155 (3d Cir. 2006) (affirming dismissal

because factual allegations were insufficient to show futility); *Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Sidney Charles Mkts., Inc.*, 2003 WL 220181, at \*5-6 (E.D. Pa. Jan. 29, 2003) (granting Rule 12(b)(6) motion to dismiss on exhaustion grounds).

Under the circumstances, Defendants' motion to dismiss Lietz's claims for failure to exhaust administrative remedies is warranted.

### Issue of standing regarding Dr. Clarke

In their motions to dismiss, Defendants argue that all of the claims asserted against them by Dr. Clarke must be dismissed for lack of standing. As stated, it is well-settled that standing to sue under §502(a) of ERISA, the statute's civil enforcement provision, is generally limited to participants or beneficiaries of ERISA governed plans. 29 U.S.C. §1132(a); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("By its terms, standing under the statute is limited to participants and beneficiaries.").

As defined in ERISA, Dr. Clarke is neither a participant nor a beneficiary. Nonetheless, he contends that he may sue as an assignee of purported participants or beneficiaries.[7] When a defendant challenges a plaintiff's standing in a motion to dismiss (as Defendants have done), "[t]he party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

---

[7] As recognized by a number of district courts in this circuit, "the Third Circuit has not settled the question of standing to sue under §502 of ERISA by assignment." *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp.2d 792, 808 (D.N.J. 2011); *see also MHA, LLC v. Aetna Health, Inc.*, 2013 WL 705612, \*2 (D.N.J. Feb. 25, 2013). In contrast, a number of other circuits have recognized a plaintiff's right to sue under ERISA by the valid assignment of a welfare benefit. *See Pascack Valley Hosp.*, 388 F.3d at 401 (stating that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under §502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan.").

To have standing as an assignee under ERISA, Dr. Clarke must "demonstrate that an appropriate assignment exists." *Community Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. Appx. 433, 436 (3d Cir. 2005) (holding that a failure to show a valid assignment "is fatal to standing" under ERISA). Dr. Clarke contends that he has standing by virtue of assignments of claims from a number of his patients, who are participants and/or beneficiaries. Specifically, Dr. Clarke relies on a standard *Assignment of Benefits* form obtained from "a number of Cigna Insured patients" he has treated. (Comp. ¶101). The assignment form provides as follows:

> I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered. I understand that I am financially responsible for all charges whether or not they are paid by insurance (commercial, worker's compensation, auto, etc.). In the event of an unpaid balance, I am aware that my bill will be sent to the collection agency and that I will be held responsible for any and all charges incurred, including attorney fees.

(*Id.*).

As set forth in the complaint, however, these alleged assignment(s) do not give Dr. Clarke standing to assert his patients' rights under their respective plans and pursue litigation under ERISA. To the contrary, the purported assignments merely afford Dr. Clarke the right to seek payment directly from the insurance companies on his patients' behalf for the services rendered. Courts in this Circuit have found similar payment assignments to be insufficient authorization for providers to pursue ERISA claims on behalf of their patients. *See e.g.*, *MHA, LLC v. Aetna Health, Inc.*, 2013 WL 705612, at *8 (D.N.J. Feb. 25, 2013) (finding patient's authorization for provider to receive payment from insurance company insufficient assignment of right to sue under ERISA); *Franco v. Connecticut General Life Ins. Co.*, 818 F.Supp.2d 792 (D.N.J. 2011); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan*, 2007 WL 2793372, at *3 (D.N.J. Sept. 25, 2007) (finding assignment of payments and appeal rights to

provider did not "give the Hospital the right to pursue litigation" under ERISA). This Court

finds these decisions persuasive. In *Franco,* 818 F.Supp.2d 792, the district court set forth its

reasoning, as follows:

> [T]he assignments consisted of nothing more than the patient-
> insured's transfer of his or her right to reimbursement by the
> insurer for an [out-of-network] service . . . Plaintiffs have
> attempted to conflate a [non-par provider's] method of billing and
> collecting payment with the [non-par provider's] assumption of the
> patient's rights to benefits under the health plan. At best, the
> allegations provide only the most ambiguous and conclusory
> information about what the purported assignments entail. At worst
> . . . they indicate that the assignments were limited to a patient's
> assigning his or her right to receive reimbursement from CIGNA
> for the covered portion of the service bill, which in no way can be
> construed as tantamount to assigning the right to enforce his or her
> rights under the plan.

*Id.* at 811-12.

This same assignment issue was addressed in *MRI Scan Center, LLC v. National Imaging*

*Associates, Inc.*, 2013 WL 1899689 (S.D. Fla. May 7, 2013), a litigation similar to the instant

case. As the *MRI* court explained, "[a]n assignment of the right to direct payment of benefits

will not assign patients'/assignors' right to bring causes of action under other ERISA provisions

that are not related to the reimbursement of benefits." *MRI*, 2013 WL 1899689, at *7 (citing

*Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc.*, 2013 WL 149356, at *11-12 (S.D.

Fla. Jan. 14, 2013) (holding that plaintiff did not have standing to seek ERISA relief – other than

for unpaid benefits – where "the complaint . . . alleges only that the patient participants or

beneficiar[ies] assigned the right to direct payment for unpaid charges to the plaintiffs, and does

not allege that the patients assigned all rights under their plans."). In *MRI*, the plaintiff alleged

that its assignments were "limited to 'bill[ing] and receiv[ing] payments,'" and left the patient

assignor financially responsible for any amounts not covered by insurance. *MRI*, 2013 WL

1899689, at *7. The court held that such an assignment was insufficient to establish the provider plaintiff's standing to sue for equitable relief under ERISA §502(a)(3). *Id.* at *7.

As in *Franco* and *MRI*, the purported assignment here unequivocally "indicate[s] that the assignments were limited to a patient's assigning his or her right to receive reimbursement from CIGNA . . . which in no way can be construed as tantamount to assigning the right to enforce any other rights under the plan." *Franco,* 818 F.Supp.2d at 811. In addition, the purported assignments leave the patients "financially responsible for all charges whether or not they are paid by insurance." (*See* Comp. ¶101). Thus, Dr. Clarke's assignment of benefits forms do not authorize him to pursue litigation under ERISA on behalf of his patients.

In an attempt to broaden the scope of the purported assignment(s), Plaintiffs attached to their opposition brief an "Authorized Representative" form that Dr. Clarke purportedly received from a patient on November 19, 2012, but is not mentioned in the complaint.[8] The authorization provides as follows:

> ERISA Authorization
> I hereby designate, authorize, and convey to [Steven G. Clarke, D.C. ("Provider")] to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause of action that I may have under such insurance policy and/or benefit plan; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.503(1)(b)(4)) with respect to any healthcare expense incurred as a result of the services I received from Provider and, to

---

[8] It is well-settled that this Court should not "consider after-the-fact allegations in determining the sufficiency of [a] complaint." *Frederico v. Home Depot,* 507 F.3d 188, 201-02 (3d Cir. 2007); *see also Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines.

(Assignment of Benefits/ERISA Authorized Representative Form, attached as Exhibit A to Declaration of D. Brian Hufford to Plaintiffs' Brief).

Since this new factual allegation was not included in Plaintiffs' complaint, this Court is precluded from considering it. This Court notes that while this purported authorization goes beyond that cited in Plaintiffs' complaint, it falls short of establishing Dr. Clarke's standing to pursue the underlying ERISA claims on behalf of his patients. Dr. Clarke has not alleged that the patient from whom this broad authorization was obtained was a participant in an ERISA-governed plan or that the patient has suffered any kind of injury as a result of the allegations contained in the complaint. To establish standing through such broad patient assignment, Dr. Clarke would have to allege facts sufficient to establish that the patient suffered injury as a result of Defendants' alleged wrongdoing; none were pled, and the "authorization" confers no right onto Dr. Clarke to pursue those ERISA claims. Accordingly, this Court finds that Dr. Clarke has failed to establish standing in this matter. Defendants' motion to dismiss for lack of standing and subject matter jurisdiction is granted as to Dr. Clarke's claims.

### Issue of standing regarding Plaintiff ACA

Defendants similarly seek dismissal of the ERISA claims asserted by Plaintiff ACA on the basis that it has failed to allege facts sufficient to establish associational standing. In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), the Supreme Court established a three prong test for associational standing; *to wit*: the party must allege facts to establish that: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 343. Defendants argue that the ACA has failed to meet requirements (1) and (3). This Court agrees with Defendants.

As to the first prong, for the same reasons Dr. Clarke has failed to establish standing, Plaintiff ACA has also failed to establish that its members (chiropractors like Dr. Clarke) have standing to sue in their own right. As set forth above, ERISA specifically limits standing to participants and beneficiaries. As pled in the complaint, the members of ACA do not meet this definition.

As to the final prong, ACA has failed to establish that the claims asserted and/or the relief requested in the complaint do not require the participation by its individual members. To the contrary, ACA's asserted claims require the participation of its members in order to demonstrate, *inter alia*, that: (1) its members were participants in CIGNA administered plans which permitted the participants' assignment of rights; (2) its members had obtained sufficient assignments of their patient's rights and claims under ERISA; and (3) its members' patients had suffered an injury as a result of the Defendants' alleged wrongdoing. This issue, similarly, was persuasively addressed by the district court in *Franco*, which found that "resolving the claims at issue requires careful examination, on a provider-by-provider basis, of the assignments signed by patients and whether they contain the language required for a valid assignment of ERISA" claims. *Franco*, 818 F. Supp.2d at 813. Because ACA has not met the *Hunt* test, it lacks associational standing and its claims are dismissed.[9]

---

[9] Plaintiffs' reliance on *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002) is misplaced because the defendants in that matter conceded that the association plaintiff met the first prong of the *Hunt* test. *Id.* at 283. Moreover, that matter did

*ACA's state law claims*

At Count III, Plaintiff ACA asserts state law claims based upon the Defendants' purported violations of the anti-discrimination, prompt pay, and utilization management statutes of New Jersey, Tennessee, Connecticut, and Missouri. ACA relies upon supplemental jurisdiction to support this Court's jurisdiction over these state law claims. (*See* Comp. at ¶22). Because this Court has dismissed all of Plaintiffs' federal claims over which it has original jurisdiction, pursuant to 28 U.S.C. §1367(c)(3), it declines to exercise supplemental jurisdiction over ACA's remaining state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert*, 1993 WL 304111, *5 (E.D. Pa. Aug. 9, 1993) (holding that "Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed.").

## CONCLUSION

For the reasons stated, Defendants' motions to dismiss are granted. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.

---

not involve, in any way, the primary standing issue presented in this case, *i.e.*, whether the plan beneficiaries/participants have assigned their ERISA claims to their provider chiropractors.