## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HIGH STREET REHABILITATION, LLC, and DEFABIO SPINE AND SPORT REHAB, LLC, individually, and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>- against –<br><br>**AMERICAN SPECIALTY HEALTH INCORPORATED, AMERICAN SPECIALTY HEALTH NETWORKS, INC., CIGNA CORPORATION and CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**<br><br>*Defendants*. | **Case No. 2:12-cv-07243-NIQA** |

August 29, 2019

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion for final approval of the settlement agreement* filed by Plaintiffs High Street Rehabilitation, LLC, and DeFabio Spine and Sport Rehab, LLC (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure ("Rule") 23, [ECF 174], and a *motion for an award of attorneys' fees to class counsel, reimbursement of class counsel's expenses, and service award to plaintiffs*. [ECF 177]. Previously, this Court granted preliminary approval to the Class Action Settlement Agreement. [ECF 171, 173]. A hearing was scheduled and held on August 16, 2019, to entertain oral argument on Plaintiffs' unopposed motion for

final approval.  Counsel for all parties appeared.  For the reasons stated herein, the motion for final approval of the class action settlement and motion for attorneys' fees and expenses are both granted.

**BACKGROUND**

In 2012, Dr. Steven G. Clarke, along with the American Chiropractic Association ("ACA"), brought this action against Defendants American Specialty Health Incorporated and American Specialty Health Networks, Inc. (collectively, "ASH"), and Cigna Corporation and Connecticut General Life Insurance Company (collectively, "Cigna," and together with ASH, "Defendants"), seeking recovery under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B), related to the denial of out-of-network plan benefits claims for chiropractic services based on Cigna and ASH's Utilization Management Reviews ("UMR") procedures.  In that complaint, Cigna's insured, Carol Lietz, also alleged distinct claims regarding administrative fees.  This Court dismissed the claims, but the Court of Appeals for the Third Circuit ("Third Circuit") affirmed in part and reversed and remanded in part.  *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169 (3d Cir. 2015).[1]  After remand, in 2015, Dr. Clarke, along with two other chiropractic practices, Ashford Chiropractic Center and Wolke Chiropractic & Rehabilitation, filed a First Amended Class Action Complaint. On June 6, 2018, Plaintiff High Street Rehabilitation, LLC, a chiropractic center operated by Dr. Clarke, filed the Second Amended Class Action Complaint (the current complaint in this action),

---

[1]     Following the remand, Ms. Lietz dismissed her claims and brought them as part of a separate case filed in November 2015 related to Cigna's administrative fees claims in the District of Colorado:  *Fayuell v. Cigna Corp.*, Civ. A. No. 15-1581.  Defendants filed motions to dismiss in the Colorado action, which the court granted in part and denied in part, leaving only Ms. Lietz's claims.  In July 2016, the *Lietz* Action was transferred to this Court and coordinated with this case for discovery purposes.  The *Lietz* Action has also been settled, a settlement which this Court has approved by separate Order.

which removed Ashford and Wolke as plaintiffs and added Plaintiff DeFabio Spine and Sport Rehab, LLC, a chiropractic care center operated by Dr. Donald C. DeFabio.

The parties engaged in extensive document and data discovery in the *High Street* and *Lietz* Actions for nearly two years, which included the following:

- Responses to extensive sets of document requests and interrogatories;
- Negotiation of a Protective Order (including special provisions to protect class members' medical information to ensure compliance with HIPAA);
- Negotiation of ESI and Claims Sampling Protocols approved by the Court;
- Production of over 200,000 documents representing over 1.5 million pages;
- Production of multiple databases and claims samples from Cigna and ASH representing over 500 gigabytes of data;
- Intensive negotiations over various document, data production, and other discovery issues, including numerous telephone conferences and email exchanges; exchange of over 100 letters; and numerous meet and confers regarding various disputes;
- Extensive work by database experts to sync the various Cigna and ASH databases in order to evaluate liability and damages issues;
- Work with a leading chiropractic expert regarding liability issues;
- The preparation of a comprehensive deposition and "trial map" synthesizing the analysis of all documents and information produced by the parties and obtained via Class Counsel's continuing investigation; and
- Preparation for depositions.

On November 13, 2018, the parties participated in a mediation session before David Geronemus, Esquire, of JAMS. In connection with the mediation, the parties exchanged extensive mediation briefs that set forth the legal and factual bases related to the parties' respective claims and defenses. After extensive negotiations, the parties reached an agreement to settle Settlement Class Members' claims for $11.75 million, plus a commitment from Defendants to take reasonable steps to implement certain business reforms.

### The Terms of the Settlement

The Settlement, the full terms of which are set forth in the Settlement Agreement, provides substantial economic benefits to the Class. The Settlement has three primary

components: (1) Cigna and ASH will pay $11.75 million as the total settlement amount, which includes $1 million toward administrative fees and $10.75 million toward benefit claims; (2) ASH will make reasonable efforts to enact certain business reforms related to the conduct challenged by Plaintiffs in this action; and (3) mutual releases of all claims between the parties. Notably, Defendants will be required to pay the Settlement Class benefits automatically. The Settlement Class Members will not need to file a claim or take any other steps to receive the payments due to them under the Settlement.

## Preliminary Approval and Class Notice

On March 26, 2019, Plaintiffs filed a *motion for preliminary approval of class action settlement, provisionally certifying settlement class, directing notice to the settlement class, and scheduling final approval hearing*. [ECF 168]. By Order dated April 8, 2019, this Court granted preliminary approval to the proposed Settlement and provisionally certified the proposed class. Pursuant to this Court's preliminary approval order, AB Data sent notice to the relevant governmental officials under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715, *et seq.*, effected publication notice, and sent direct postcard notice to Settlement Class members in accordance with the plan for notice, which this Court found to be the best notice practicable under the circumstances and consistent with the requirements of due process. Notice was mailed to 26,128 Settlement Class Members. The notices provided each Settlement Class Member with an approximate amount of the check they would receive if the Settlement is approved. No objections were filed, only two (2) Settlement Class Members opted-out of the Settlement, and one Member served a challenge to its payment amount. In addition, Class Counsel made presentations to the Pennsylvania Chiropractic Association and the Association of New jersey

Chiropractors and communicated with the American Chiropractic Association; each of these organizations support the Settlement.

## DISCUSSION

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit set forth factors (often called the "*Girsh* factors") a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible
recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). However,

no one factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Further,

a "court may approve a settlement even if it does not find that each of [the *Girsh*] factors weighs

in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d

Cir. 2018).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the

Third Circuit identified additional nonexclusive factors (the "*Prudential* factors") for courts to

consider for a "thorough going analysis of settlement terms." *See also In re Pet Food Prods.*

*Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors often overlap with the

*Girsh* factors, and include:

(1)  the maturity of the underlying substantive issues, as measured
by experience in adjudicating individual actions, the development
of scientific knowledge, the extent of discovery on the merits, and
other factors that bear on the ability to assess the probable outcome
of a trial on the merits of liability and individual damages;
(2)  the existence and probable outcome of claims by other classes
and subclasses;
(3)  the comparison between the results achieved by the settlement
for individual class or subclass members and the results achieved
or likely to be achieved for other claimants;
(4)   whether class or subclass members are accorded the right to
opt-out of the settlement;
(5)  whether any provisions for attorneys' fees are reasonable; and
(6)   whether the procedure for processing individual claims under
the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350. Only the *Prudential* factors relevant to the litigation in question

need be addressed. *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and the

relevant *Prudential* factors in its review of the proposed class action settlement.

***Girsh* Factors**

1. *The complexity, expense and likely duration of the litigation*

Needless to say, had the Settlement not been reached, this matter would likely have proceeded to trial on the issues of liability and a determination of damages, if any. The continued prosecution of Plaintiffs' claims against Defendants would have required significant additional expense to the Class and a substantial delay before any potential recovery. Though at the time the parties reached the Settlement, the parties had vigorously litigated this case for more than seven years and engaged in extensive fact discovery, much work remained, including fact depositions, expert discovery, and motion practices with respect to class certification and summary judgment. Further, no matter the outcome of a trial, it is likely that one or all of the parties would have appealed, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence of the

proposed settlement's fairness and adequacy. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, Defendants identified 26,128 individuals who meet the Class definition. Those individuals identified as potential Class members were mailed notices and Class forms. As of the date of the final approval hearing held on August 16, 2019, no Class Member had objected to the proposed settlement and only two (2) members had opted out. This factor is persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (finding that a low number of objectors and opt-outs strongly favors approval of the settlement).

### 3. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement. Prior to reaching a settlement, the parties briefed multiple motions to dismiss, engaged in extensive

discovery and negotiations over discovery issues, and participated in a successful private mediation. As a result of the extensive proceedings that preceded the parties' settlement, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

### 4. *The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319. This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (quoting *Prudential II*, 148 F.3d at 319).

In this case, after considering the parties' various substantive filings, the outcome of this matter with respect to liability is far from certain. Defendants have denied any liability throughout this litigation. The proposed settlement, of course, avoids the risk that Defendants be found not liable. Thus, this Court finds that this factor weighs in favor of approval.

### 5. *The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential II*, 148 F.3d at 319. In *Warfarin Sodium I*, the trial court found that the

risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *In re Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is likely true here. Accordingly, this factor weighs in favor of approval.

### 6. The risks of maintaining the class action through trial

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. As noted above, this action has been vigorously litigated by both sides from the outset. As such, it is likely that the issue of class certification would have been the subject of vigorous dispute. Further, even if class certification were granted in this matter, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, 2016 WL 4033969, at *15 (D. N.J. July 26, 2016). Accordingly, this factor weighs in favor of approval.

### 7. The ability of defendants to withstand a greater judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. Though the parties acknowledge that Defendants have the ability to withstand a judgment greater than the settlement

amount, where the defendants' ability to pay greatly exceeds the potential liability, this factor is generally neutral.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010).  This Court finds that this factor is neutral.

### 8-9.  The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  Here, the Class is receiving a significant settlement amount which offers real economic benefits to Class Members.  Class Members do not have to submit claims, but instead will be automatically mailed checks to offset the financial responsibility they incurred for services from an ASH-contracted provider.  The Settlement also requires ASH to use reasonable efforts to implement an array of business reforms.  As previously noted, the expense of a trial and use of the parties' resources would have been substantial, especially in conjunction with the post-trial motions and appeals that would have likely followed any trial on the merits.  Thus, a settlement is advantageous to all parties.  Therefore, these factors weigh in favor of approval.

**Relevant *Prudential* Factors**

*1. Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings. As discussed above, there has been significant discovery on the merits and Class Counsel is aware of the complexity and risk inherent in a trial on the merits. In addition, the parties participated in a meaningful and successful private mediation. As such, the litigants were in a position to fully evaluate the strengths, weaknesses, and merits of their case. The advanced development of the record weighs in favor of approval. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

*2. Results achieved by settlement for individual Class Members versus the results achieved – or likely to be achieved – for other claimants*

This factor weighs in favor of approval since very few class members opted out and all Settlement Class Members will receive Settlement benefits automatically without having to take any action.

*3. Whether Class or Subclass Members are afforded the right to opt out of the settlement*

As part of the Class notice process approved by this Court, Settlement Class members were provided robust notice and the opportunity to opt-out. Only a very small number of members in relation to the overall class size chose to opt-out.

*4. Whether any provisions for attorneys' fees are reasonable*

As part of the Class notice process approved by this Court, Class members were advised that Plaintiff would seek an award of attorneys' fees of no more than one-third of the settlement amount. No potential member of the Class objected to such an award. Moreover, for the reasons

12

discussed in greater detail below, the attorneys' fees and expenses sought and agreed to in this case are reasonable. Thus, this factor weighs in favor of approval.

### 5. Whether the procedure for processing individual claims under the class action settlement is fair and reasonable

The claims processing procedures put in place by the Settlement are fair and reasonable. Indeed, Settlement Class Members will receive checks automatically without the need to fill out and submit claim forms. This factor supports approval of the settlement.

In summary, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

### Class Certification

As noted, by Order dated April 8, 2019, this Court provisionally certified the following proposed class:

> All ONET Chiropractic Providers who provided clinical services up to the Final Approval Date to a Plan Member, and whose claims for reimbursement of such services were subjected to the ASH policies or practices as part of the claims review or benefit determination process and where some or all of the claim was denied.

Notwithstanding, this Court must again determine whether class certification is appropriate under Rule 23. *In re Prudential*, 148 F.3d at 308.

A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465 (2013); *see also Marcus v. BMW of North America*, 687 F.3d 583, 590 (3d Cir. 2012). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338, 350 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.,* 568 U.S. at 465-66 (quoting *Dukes*, 131 S. Ct. at 2551). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

To satisfy the Rule 23(a) requirements:

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus*, 687 F.3d at 590-91 (citations omitted).

Here, Plaintiffs seek certification of the proposed class, as provisionally certified, pursuant to Rule 23(b)(3). This Rule permits certification when the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### *Rule 23(a) Requirements*

#### *1. Numerosity*

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum

number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes*, 725 F.3d at 357. "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id*.

Here, the Settlement Class includes approximately 26,000 Settlement Class Members. Given the number and geographic distribution of the Settlement Class Members, joinder of all Settlement Class Members would be impracticable, and the proposed Settlement Class satisfies Rule 23's numerosity requirement for settlement purposes. *Liberty*, 149 F.R.D. at 73.

### 2. Commonality and Typicality

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). Under the Rule, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S.Ct. at 2551. It "does not require identical claims or facts among class member[s]." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 597 (2012) (citations omitted). "For purposes of Rule 23(a)(2), even a single common question will do." *Id*. Claims common to the entire class "must depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution . . . [and] that determination of its truth

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551.

Under Rule 23(a)(3), a court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality and commonality are closely related and often merge. *Marcus*, 687 F.3d at 597. Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id.* at 598. "If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id.*

Typicality ensures that the putative class members' and representative's interests "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [their] own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations omitted). Typicality is met "when the named plaintiffs and the proposed class members 'challenge [] the same unlawful conduct." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). Complete "factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

Here, a single overarching common question—whether Defendants' UMR processes violated ERISA—cuts across every claim of every Settlement Class Member. *Rodriquez v. Nat'l*

*City Bank*, 726 F.3d 372, 832 (3d Cir. 2013) ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant.").  In addition, Plaintiffs assert the same ERISA claim, under the same legal theories for the same wrongful conduct as the other Settlement Class Members.  As such Rule 23(a)(2) and (3)'s requirements of common question of law or fact and typicality are satisfied.

### 3. Adequacy

Under Rule 23(a)(4), a court must determine whether the proposed class representative "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To meet the adequacy requirement, a finding must be made that (1) plaintiff's interests do not "conflict with those of the class" and (2) the proposed class counsel are "capable of representing the class."  *Newton*, 259 F.3d at 185.  The Third Circuit has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012), and "not proof of vigorous pursuit of the claim."  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005).  This requirement serves "to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously." *Dewey*, 681 F.3d at 184.

Here, there is no conflict between the proposed Class Representatives and the Class because, as with all members of the Class, Plaintiffs seek compensation for the same claims from the same Defendants.  Plaintiffs have no interests that are antagonistic to or in conflict with the Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class Members.  In addition, Class Counsel have substantial experience prosecuting

large-scale class actions, including ERISA class actions against health insurers.  Accordingly, both prongs of the adequacy inquiry are met.

*Rule 23(b)(3) Requirements*

Having found that Plaintiffs have satisfied each of the Rule 23(a) prerequisites, this Court must determine pursuant to Rule 23(b) whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These two requirements are generally referred to as the "predominance and superiority" factors.

*1. Predominance*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Issues common to the class must "predominate" over individual issues.  *In re Prudential Ins. Co. Am. Sales Practice Litig*., 148 F.3d 283, 313-14 (3d Cir. 1998).  "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'"  *In re Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Blades v. Monsanto Co*., 400 F.3d 562, 566 (8th Cir. 2005)).

The predominance requirement is met here.  Plaintiffs allege that each Settlement Class member was subject to the same UMR practices.  As such, the claims of each similarly situated Settlement Class Member address the same issues of law and fact.  Accordingly, this Court finds

that the questions of law or fact common to class members that involve liability predominate over questions involving only individual members.

## 2. *Superiority*

Under the second criterion of Rule 23(b), this Court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *Community Bank of Northern Virginia*, 418 F.3d at 309 (citations omitted). A "nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority requirement is found in the text itself. *Amchem*, 521 U.S. at 615-16. The list includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority inquiry is simplified in the settlement context, because when certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial. *Amchem*, 521 U.S. at 620. In making this analysis, the district court may take the proposed settlement into consideration. *Prudential II*, 148 F.3d at 308; *Warfarin Sodium II*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

Here, a class action is the superior method of resolving the Settlement Class Members' claims. All of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards. It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis. In addition, the Settlement provides Settlement Class Members the ability to obtain predictable, certain, and definite compensatory relief promptly. By contrast, individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that injured Settlement Class Members will obtain timely compensatory relief at the conclusion of the litigation. Accordingly, this Court finds that consideration of the Rule 23(b) factors weighs favorably for certification. Because of the number and nature of potential class plaintiffs and the fact that each member's potential recovery is likely to be small compared to the cost of litigating an individual case, maintaining this matter as a class action is judicially advisable and superior to other available methods.

After carefully concluding the requisite "vigorous analysis" of the factors in Rules 23(a) and (b), this Court finds that the requirements of Rule 23 have been met and that certification of Plaintiffs' proposed class is proper.

## Request for Attorneys' Fees and Expenses

As compensation for their legal services and efforts, Class Counsel have requested this Court to approve the portion of the settlement which provides for reimbursement of attorneys' fees in an amount equal to 33.3% of the total settlement amount, or $3,916,666.67, and expenses in the amount of $239,500.48. This is an amount contemplated and agreed to in the settlement agreement and disclosed to Class members. As noted above, the notice provided to potential Class members expressly informed them that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the total settlement amount and up to

$300,000.00 in reimbursed litigation expenses and a $10,000.00 service award to each of the Plaintiffs in recognition of their services as class representatives. To date, no Class member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee. In support of their request for fees and reimbursement of costs and expenses, counsel rely upon two declarations of counsel summarizing their time and the expenses incurred on behalf of the Class. (*See* Decls. of Steven A. Schwartz and Jason M. Knott).

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "[A] thorough judicial review of fee applications is required in all class action settlements." *In re Gen. Motors Corp Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995). The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). Plaintiffs and Class Counsel seek approval of an award of attorneys' fees and reimbursement of litigation expenses in accordance with the terms of the Class Action Settlement Agreement.

### *Attorneys' Fees*

There are two methods of calculating attorneys' fees in class actions – the percentage of recovery method and the lodestar method. *In re Prudential*, 148 F.3d at 332-33. The percentage-of-recovery approach "applies a certain percentage to the settlement fund," while the lodestar method "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Sullivan v. DB Inv. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The percentage-of-recovery approach is more appropriate where, as here, there is a common

fund. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 164 (3d Cir. 2006) (finding that the percentage method is "generally favored" in common fund cases because "it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."); *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

In determining what constitutes a reasonable percentage fee award under the percentage-of-recovery approach, the Third Circuit has directed district courts to consider ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (the "*Gunter/Prudential* factors"); *to wit*:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

*Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 336-40; *Diet Drugs*, 582 F.3d at 541. Although district courts should "engage in robust assessments of the [*Gunter/Prudential* factors] when evaluating a fee request," these factors are not exhaustive, and should not be applied in a formulaic way. *In re Rite Aid*, 396 F.3d at 301-02. This Court will apply each of these factors to determine the reasonableness of the attorneys' fees request.

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). Here, the parties negotiated a settlement with a common fund of $11.75 million that confers a benefit upon approximately 26,000 Settlement Class Members. This fund will provide monetary benefit to all members of the Settlement Class who provided clinical services to Cigna insureds and whose claims for reimbursement of such services were denied in whole or part pursuant to ASH's UMR policies or practices. Even after deduction of the requested attorneys' fees and expenses and notice and administrative expenses, the $11.75 million fund is large enough to provide Settlement Class Members with checks that, based on Plaintiffs' estimates, would represent a recovery of 11% of the amount that Settlement Class Members would have been paid if their claims had not been denied in whole or in part ass a result of ASH's UMR policies and practices. Because Plaintiffs did not allege that every single bill should have been approved, but only that ASH's UMR practices were arbitrary and capricious, the $11.75 million recovery represents a higher percentage of the maximum damages Plaintiffs would have recovered even if they prevailed on their claims. The Settlement also confers a non-monetary benefit upon all Settlement Class Members because it requires ASH to make changes to its Professional Affairs Health Advisory Committee, offer continuing education to providers, and more. This factor, therefore, favors approval of the fee request.

2.     *The presence or absence of substantial objections by members of the class*

*Gunter* advises that a court should consider "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." *Gunter*, 223 F.3d at 195 n.1.   Nearly 26,000 Class Notices were sent to Settlement Class Members notifying them that Defendants had agreed to pay attorneys' fees in an amount not to exceed one-third of the total settlement amount, to reimburse expenses in an amount not to exceed $300,000.00, and to pay Plaintiffs incentive awards in the amount of $10,000.00 each as recognition of their service as Class Representatives.   No objections were filed.   This absence of objections supports the approval of Plaintiffs' fee petition.   *See, e.g.*, *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 455–56 (D.N.J. 2004) (citing *Gunter*, 223 F.3d at 195 n.1); *In re Gen. Motors*, 55 F.3d at 812.

3.     *The skill and efficiency of the attorneys involved*

Class counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."   *In re Viropharma Inc. Secur. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (quoting *In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).   Here, Class Counsel have substantial experience prosecuting large-scale class actions, including ERISA class actions against health insurers.   This experience undoubtedly contributed to the favorable outcome negotiated with equally experienced opposing counsel.   Therefore, this factor also weighs in favor of approval.

### 4. The complexity, expense, and likely duration of the litigation

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). As noted, the claims in this action have been the subject of hard-fought litigation for over six years. Notwithstanding its duration and progress, if this case were to go to trial, it would have involved substantial additional discovery and motion practice at great expense to the parties. Moreover, even if Plaintiffs would have recovered a large judgment at trial on behalf of the Settlement Class Members, their actual recovery would likely be postponed for years. There is also the possibility that Plaintiffs would recover nothing. The Settlement Agreement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now." *In re Viropharma Inc.*, 2016 WL 312108, at *16. This factor, therefore, weighs in favor of approval.

### 5. The risk of non-payment

Class Counsel undertook this action on an entirely contingent fee basis. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. 2012); *see also In re Ocean Power Techs, Inc.*, 2016 WL 677218, at *28. Class Counsel has litigated this case for more than six years without pay and has shouldered the risk that the litigation would yield little to no recovery. Accordingly, the fifth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 6. The amount of time devoted to the case by plaintiffs' counsel

The sixth *Gunter/Prudential* factor considers the amount of time Class Counsel devoted to the litigation. *Gunter*, 223 F.3d at 199. Class Counsel estimates that over 10,000 hours of

attorney and other professional and paraprofessional time were expended on this case. These hours are reasonable for a complex class case like this one. Thus, the sixth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 7. *The awards in similar cases*

While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995). In complex ERISA cases, courts in this Circuit and others also routinely award attorneys' fees in the amount of one-third of the total settlement fund. *See In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *9 (D. N.J. Feb. 9, 2010); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015). Accordingly, this factor weighs in favor of approval.

### 8. *Value of benefits attributable to the efforts of class counsel relative to the efforts of others*

Class Counsel were the only ones investigating the claims at issue in this case, and they alone initiated this federal action and actively litigated it. Because Class Counsel were the only ones pursuing the claims at issue in this case, this factor weighs in favor of approval.

### 9. *Percentage fee that would have been negotiated*

Class Counsel agreed to litigate this case on a contingent fee basis, and successfully negotiated a settlement. Were this case an individual action, the customary contingent fee would likely range between thirty and forty percent of the recovery. *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) ("In private contingency fee cases, attorneys routinely negotiate agreements for between thirty percent and forty percent of the recovery."); *In re Ikon Ofc. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases,

particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Here, Class Counsel's requested percentage of 33.3% is commensurate with customary percentages in private contingent fee agreements. Thus, this factor supports approval.

### 10. *Innovative terms of the settlement*

The Settlement Agreement does not contain any innovative terms. This factor is neutral as it neither weighs in favor of nor against approval.

### *Lodestar Cross-Check*

In common fund cases such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan*, 667 F.3d at 330. The purpose of the cross-check is to ensure that the percentage approach does not result in an "extraordinary" lodestar multiple or a windfall. *See In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001). The Third Circuit has stated that a lodestar cross-check entails an abridged lodestar analysis that requires neither "mathematical precision nor bean counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The Court need not receive or review actual billing records when conducting this analysis. *Id.* at 307.

Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

"In calculating the second part of the lodestar determination," *i.e.*, the time reasonably expended, a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

Attached to the Schwartz and Knott Declarations, Class Counsel included a summary of the hours worked by the partners, associates, and professional support staff involved in this litigation. These summaries were prepared from contemporaneous, daily time records regularly prepared and maintained by the respective firms. Class Counsel and support staff are claiming 10,028.18 hours for work done at hourly rates between $60 and $1,095. After reviewing the Attorney Declarations, it appears that Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. These hourly rates are also well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular current rates

charged for their services in standard non-class matters, including contingent and non-contingent matters. The attorneys have substantial experience in complex class action litigation, and their hourly rates are also within the range charged by attorneys with comparable experience levels for litigation of a similar nature. *See, e.g.*, *Barel v. Bank of Am.*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009).

Having found the hourly rates and hours expended reasonable, as of June 10, 2019, the aggregate lodestar calculation is $5,103,887.61, for the 10,028.18 hours of attorney and support staff work. Class Counsel's request for $3,916,666.67 (one-third of the settlement amount) will result in Class Counsel receiving considerably less than the lodestar. This Court notes that courts frequently approve attorneys' fees awards for amounts in excess of the calculated lodestar. Indeed, multiples ranging from 1 to 4 are often used in common fund cases. *In re Prudential*, 148 F.3d at 341; *see also Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving multiplier of "slightly above 3" in FLSA collective action). In addition, this Court has considered that Class Counsel took the case on a contingent basis, *see Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973); there were no objections filed by Settlement Class Members to the amounts requested, *see Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 124 (E.D. Pa. 2005); and Class Counsel has obtained a significant recovery for the Settlement Class Members.

Therefore, having considered the relevant *Gunter/Prudential* factors and performed the lodestar cross-check, this Court approves the reasonable amount of attorneys' fees requested.

### *Reimbursed Litigation Expenses*

Class Counsel also seeks approval of the portion of the Fee Agreement which entitles them to a reimbursement of expenses not to exceed $300,000.00. Class Counsel claims that they

incurred $239,500.48 in actual expenses during the pendency of this litigation. This includes costs incurred in connection with the prosecution and settlement of the litigation for items such as: expert fees, filing fees, postage, transportation, working meals, printing, and consultant fees. Counsel in "common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp. Deriv. Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). After carefully reviewing the documentation supporting the reimbursement request, including the Attorney Declarations, this Court finds that the litigation expenses listed by Class Counsel are reasonable and expected in this type of case. Therefore, Class Counsel's request to be reimbursed $239,500.80 in litigation expenses is granted.

### Service Awards

Class Counsel also seek this Court's approval of Service Awards to Drs. Clarke and DiFabio, in the amount of $10,000.00 each, for their willingness to undertake the risks and the burden of this litigation. "Incentive awards are not uncommon in class action litigation . . . ." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These payments "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id.* (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to the Settlement Class Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution. In doing so, these individuals devoted time and energy to the litigation, including assisting Class Counsel with discovery and the mediation. The requested awards are well within the range of awards

made in similar cases.  *See Barel*, 255 F.R.D. at 402-03 (awarding $10,000.00 incentive award); *Brown*, 2017 WL 2986300, at *7 (awarding $10,000 to each named plaintiff because they "were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit" and "the service award payments represent a small fraction of the $452,586 Settlement Fund.").  Settlement Class Members were also notified that Class Counsel would request these individual awards for Plaintiffs.  No Settlement Class Members objected to the Service Awards.  Accordingly, this Court approves the requested awards of $10,000.00 each to Drs. Clarke and DiFabio.

**CONCLUSION**

For the reasons stated herein, this Court grants final approval of the proposed class action settlement, awards Class Counsel reasonable attorneys' fees in the amount of $3,916,666.667 and the reimbursement of expenses in the amount of $239,500.48, and awards the sum of $10,000.00 to each of the Class Representatives, Drs. Clarke and DiFabio.  An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO
*Judge, United States District Court*